UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON BLYTHE, an individual,<br><br>                      Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>                      Defendant. | Case No.: 24-cv-02211-GPC-DDL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[ECF No. 9]** |

## INTRODUCTION

This case involves a challenge to City of San Diego Ordinance O-21822 ("the Ordinance"), which restricts First Amendment activity within 100 feet of health care facilities, places of worship, and school grounds ("Covered Facilities"). ECF No. 1 ("Compl.") ¶¶ 7-9; ECF No. 11-1 at 9-10. Within this radius, the Ordinance prohibits individuals from "knowingly and willfully approach[ing] within eight feet of a person in the public right-of-way or sidewalk area seeking to enter or exit a health care facility, place of worship, or school grounds" to pass leaflets, display signs, or engage in oral protest, education, or counseling, unless the individual first obtains consent. Compl. ¶ 9. The Ordinance is a carbon copy of the ordinance the Supreme Court upheld in *Hill v.*

*Colorado*, 530 U.S. 703 (2000), except that the Ordinance includes places of worship and school grounds, while the ordinance in *Hill* applied only to health care facilities, *id.* at 707. Plaintiff essentially argues that the addition of places of worship and school grounds to the list of Covered Facilities places this Ordinance outside of what is constitutionally permissible.

On November 25, 2024, Plaintiff Don Blythe sued the City of San Diego, claiming that the Ordinance violates his free speech rights under the First Amendment of the United States Constitution, on its face and as applied. Compl. ¶¶ 13-21. Currently before the Court is Plaintiff's motion for a preliminary injunction, which he filed on December 13, 2024. ECF No. 9. Defendant opposed the motion, ECF No. 11, and Plaintiff replied, ECF No. 12. On January 6, 2025, the Court held a hearing and considered the parties' oral arguments on the motion. ECF No. 16. For the reasons below, the Court DENIES Plaintiff's motion for a preliminary injunction.

## BACKGROUND

On November 25, 2024, Plaintiff filed a Complaint against the City of San Diego, arguing that City of San Diego Ordinance O-21822 ("the Ordinance") is unconstitutional. *See* Compl. The Ordinance, which the City enacted on June 11, 2024, *id.* ¶ 6, reads in relevant part:

> (c) Consent Required. Within a radius of 100 feet of a *health care facility*, *place of worship*, or *school grounds*, unless the person or motor vehicle occupant *consents*, no person shall:
> (1) knowingly and willfully approach within eight feet of a person in the public right-of-way or sidewalk area who is seeking to enter or exit a *health care facility*, *place of worship*, or *school grounds*, to:
>   (i) pass a leaflet or handbill to that person;
>   (ii) display a sign to that person;
>   (iii) engage in oral protest, education, or counseling.

*Id.* ¶ 9; ECF No. 9-3 at 5; ECF No. 11-1 at 9-10.[1]  Plaintiff claims that the Ordinance "prohibits constitutionally protected speech and assembly on public streets and sidewalks."  Compl. ¶ 2.  More specifically, Plaintiff argues that the Ordinance, on its face and as applied to him, violates the First and Fourteenth Amendments to the United States Constitution.  *Id.* ¶¶ 12-21.

Plaintiff, "[m]otivated by his moral, religious, and political beliefs, . . . regularly engages in pro-life, anti-abortion speech activities in California."  *Id.* ¶ 4.  Specifically, he "seeks to display and distribute written information and engage in thoughtful discussions with college and high school students" dozens of times each year.  *Id.*  Relevant here, Plaintiff intends to engage in such activities near high schools in the City of San Diego.  *Id.* ¶¶ 10-11.  Plaintiff alleges that he, alongside others, intends to come within eight feet of students as they leave school grounds to pass leaflets.  *Id.* ¶ 11.  Plaintiff believes that "[o]btaining consent is an unrealistic requirement for distributing literature to multiple people arriving in waves," *id.* ¶ 12, and he is therefore concerned that he will be arrested for failing to abide by the Ordinance if he carries on with his intended activities, *id.*

As a result, Plaintiff brought the instant lawsuit against the City of San Diego.  *See generally id.*  On December 13, 2024, Plaintiff filed a motion for a preliminary injunction, seeking to enjoin enforcement of the Ordinance.  ECF No. 9-1 at 1-2.

---

[1] Both Plaintiff and Defendant request that the Court take judicial notice of their respective copies of the Ordinance.  ECF No. 9-3; ECF No. 11-1.  Neither party opposes the other party's request for judicial notice.  Under Federal Rule of Evidence 201, a Court may take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  "Municipal ordinance are proper subjects for judicial notice."  *Tollis, Inc. v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *see also Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 n.1 (9th Cir. 2009) (taking judicial notice of a city ordinance); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (same).  The Court thus GRANTS the requests for judicial notice.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy" that may only be granted if Plaintiff demonstrates: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## DISCUSSION

### I. Likelihood of Success on the Merits

#### a. The Ordinance is Content Neutral

Content based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* For instance, laws are content based if they "target speech based on its communicative content," *id.*, or "single[] out particular content for differential treatment," *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc).

Plaintiff argues that the Ordinance is content based and thus subject to strict scrutiny. ECF No. 9-1 at 4. Specifically, Plaintiff contends that "the Ordinance bans certain unconsented speech topics," while leaving open other topics of casual conversation, such as requests for directions or discussion of school assignments. *Id.* Defendant responds that the Ordinance applies equally to all individuals regardless of the content of their message or the viewpoint being communicated and is thus content neutral. ECF No. 11 at 9.

The Ordinance does not facially distinguish between different topics of speech, ideas, or messages. It applies to leafletting; displaying signs; and oral protest, education,

or counseling.  *See* Compl. ¶ 9; ECF No. 11-1 at 9-10.  Without any mention of viewpoints or the subject matter of the communications, the Ordinance cannot be said to "draw[] distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163.  The Ordinance applies equally to those handing out pamphlets about climate change, those displaying signage about their religion, and those seeking to orally educate students about gun control legislation.  As such, the Ordinance is not regulating speech because of the topics or ideas being discussed.

Several of the Supreme Court's First Amendment cases are instructive here.  In *Hill v. Colorado*, 530 U.S. 703 (2000), the Court considered an ordinance with language identical to the Ordinance at issue here.  The ordinance made it unlawful within 100 feet of the entrance to a health care facility to "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person[.]" *Id.* at 707.  When assessing whether the ordinance was content neutral, the Court reasoned that it "places no restrictions on—and clearly does not prohibit—either a particular viewpoint or any subject matter that may be discussed by a speaker.  Rather, it simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." *Id.* at 723.  The same reasoning applies here, given the identical language of the ordinances.  The Court has also found similar restrictions on broad categories of communications to be content neutral because they applied evenly to everyone, regardless of viewpoint or subject matter.  *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 643-44, 648-49 (1981) (finding rule that required all who desired to distribute materials at a state fair to do so only from designated booths because "the Rule applies evenhandedly to all who wish to distribute and sell written materials or to solicit funds"); *Frisby v. Schultz*, 487 U.S. 474,

477 (1988) (accepting lower courts' conclusion that ordinance prohibiting all picketing in residential areas, regardless of the underlying subject matter, was content neutral).

The Court is not convinced by Plaintiff's attempt to create a content based distinction in the Ordinance by distinguishing between the core First Amendment activities restricted in the Ordinance and everyday conversation. The Ordinance restricts broad categories of communications: leafletting, displaying of signs, and oral protests, education, or counseling. That the Ordinance does not prohibit friendly conversation about school assignments or weekend plans does not make it content based. This is a distinction between different broad categories of communication, between protesting and friendly conversation, between educating a stranger and catching up with a friend. The Ninth Circuit recently found a regulation requiring a similar distinction between classes of speech to be content neutral. *See Project Veritas v. Schmidt*, --- F.4th ----, 2025 WL 37879, at *4 (9th Cir. Jan. 7, 2025) ("[a] regulation may remain content neutral despite touching on content to distinguish between classes or types of speech—such as speech that constitutes solicitation . . . so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic"). Further, this distinction does not approach the type of content based distinctions that the Constitution admonishes. *See, e.g., Reed*, 576 U.S. at 165 (finding municipal code to be content based because it defined "Temporary Directional Signs," "Political Signs," and "Ideological Signs" differently and then subjected each of the categories to different restrictions).

Moreover, the "knowing and willful" language in the Ordinance defeats Plaintiff's argument. An individual such as the Plaintiff, who seeks to engage in "hand-to-hand leafletting, education about abortion, and holding signs with a pro-life, anti-abortion message" in the vicinity of high schools, *see* Compl. ¶¶ 4, 10, is knowingly and willfully engaging in the speech which the Ordinance restricts. On the other hand, a high school student discussing a math assignment with a friend on their way into school is not

knowingly and willfully engaging in such First Amendment activities in the same way. Such conduct cannot reasonably come within the reach of the Ordinance. *See Hill*, 530 U.S. at 722 ("[t]he regulation of such expressive activities, by definition, does not cover social, random, or other everyday communications"). As a result, the Ordinance cannot be said to distinguish between these two broad types of communication. For this additional reason, Plaintiff's argument fails.

Accordingly, the Court finds that the Ordinance is content neutral.

### b. The Ordinance is a Valid Time, Place, and Manner Regulation

Plaintiff then argues that, even if the Ordinance is content neutral, it is still an unconstitutional time, place, and manner regulation under intermediate scrutiny. ECF No. 9-1 at 4-7. When the government imposes content neutral restrictions on speech in a public forum, the restrictions must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

#### i. Narrow Tailoring

"For a content-neutral time, place, or manner restriction to be narrowly tailored, it must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 486 (quoting *Ward*, 491 U.S. at 799). The regulation need not be the least restrictive means of serving the government's interests, but the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. *Id.* (quoting *Ward*, 491 U.S. at 798-99).

Plaintiff argues that the Ordinance is not narrowly tailored to further the government's interest in protecting vulnerable students at schools. ECF No. 9-1 at 5-7. Plaintiff first tries to distinguish the instant case from *Hill*, a case which warrants more

discussion here. In *Hill*, the Court considered an ordinance with identical language, but which only applied within 100 feet of health care facilities, and not places of worship or schools.² 530 U.S. at 707. The Court found that the ordinance was narrowly tailored to serve the governmental interest of protecting individuals seeking health care. *See Hill*, 530 U.S. at 729. The Court first noted that "[s]tates and municipalities plainly have a substantial interest in controlling the activity around certain public and private places," including "schools, courthouses, polling places, and private homes." *Id.* at 728-29. The Court further "noted the unique concerns that surround health care facilities," *id.* at 728, as individuals entering and leaving these facilities "are often in particularly vulnerable physical and emotional conditions," *id.* at 729.

The Court found that the ordinance was "an exceedingly modest restriction on" speech which was appropriately tailored to protect the vulnerable individuals entering and exiting health care facilities. *Id.* The eight-foot zone does not negatively impact demonstrators with signs, nor does it impact oral communicators, as eight feet still allows a "normal conversational distance." *Id.* at 726-27. Demonstrators can also remain in place and allow willing pedestrians to pass within eight feet and accept any handbills. *Id.* at 727. The Court reasoned that because the restriction "leaves ample room to communicate a message through speech" and occurs "where the restriction is most needed," it is reasonable and narrowly tailored. *Id.* at 730.

Plaintiff argues that "those entering or leaving [these facilities] do not have a presumptive need for this sort of physical or emotional buffer" and that thus "[n]o authority supports such an expansion" of *Hill*. ECF No. 9-1 at 5-6. But, as Defendant

---

² The ordinance in *Hill* "makes it unlawful within the regulated areas for any person to 'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person[.]'" *Hill*, 530 U.S. at 707.

points out in its opposition, *see* ECF No. 11 at 12-12, the Supreme Court has emphasized the importance of protecting schools and students. In *Hill*, the Court noted that it has "recognized the special governmental interests surrounding schools[.]" *Hill*, 530 U.S. at 728 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972)). In *Grayned*, the Court reasoned that expressive activity can be restricted at schools if, for example, the activity "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Id.* at 118 (quoting *Tinker v. Des Moines Independent Community Sch. Dist.*, 393 U.S. 503, 513 (1969)). This is because "public schools in a community are important institutions" which "could hardly tolerate boisterous demonstrators who . . . block entrances[.]" *Id.* at 118-19. The city thus had a "compelling interest in having an undisrupted school session conducive to the students' learning[.]" *Id.* at 119. This is precisely the compelling interest the City of San Diego has here. It hopes to "prohibit unwanted approaches within eight feet to ensure students can attend school free from harassment, obstruction, or intimidation." ECF No. 11 at 13. The more important question is whether the City has narrowly tailored the Ordinance to serve this interest.

Plaintiff attacks the Ordinance's tailoring by arguing that "the legislative history of the Ordinance contains no evidence of threats to 'access [to] educational services,' much less that existing or alternative laws not restricting speech were insufficient to protect access to such services." ECF No. 9-1 at 6. But the Ordinance does state that "demonstration activities around Covered Facilities have subjected students, teachers, [and] parents . . . to harassment and abuse from people who attempt to block entrances and exits to Covered Facilities and parking lots used to access these locations." ECF No. 11-1 at 5. Further, the legislature noted that "aggressive demonstration activities pose significant public safety threats" and that "places of worship and schools are increasingly exposed to demonstration activities." *Id.*

At the hearing on the motion, Plaintiff's counsel further argued that there was a lack of staff reports or other findings to justify the extension of *Hill* to schools. However, the City Attorney's staff report on the Ordinance provides support for the City's interests in extending *Hill* to schools.³ Ex. 1 at 2-3. The report notes that "schools have become assembly places" and that "further demonstration activity is anticipated." *Id.* at 3. The report cited several school demonstrations in California that occurred in 2023, including a Poway protest which led the school district's board of directors to adjourn a public meeting. *Id.* Further, a San Diego school board member testified to the City Council's Public Safety Committee that there have been "multiple instances of anti-vaccine protestors blocking school operations during the pandemic." *Id.* In all, the City considered various sources in deciding that these restrictions are necessary near its schools. The Court "generally defer[s] to the legislative body passing the law in determining whether the government's ends are advanced by a regulation." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1073 (9th Cir. 2006). Accordingly, the

---

³ The staff report can be found as a "supporting document" to Item 52 (the Ordinance) on the San Diego City Council's May 21, 2024 agenda. *See City of San Diego Council Agenda*, City of San Diego (May 21, 2024), https://sandiego.hylandcloud.com/211agendaonlinecouncil/Meetings/ViewMeeting?id=6048&doctype=2&site=council#_Toc167976932. A link to download the staff report is available at https://sandiego.hylandcloud.com/211agendaonlinecouncil/Documents/DownloadFile/Staff%20Report%20for%20-%20%20().pdf?documentType=1&meetingId=6048&itemId=233704&publishId=913312&isSection=False&isAttachment=True.

Federal Rule of Evidence 201(c)(1) permits the court to take judicial notice *sua sponte*. *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018). The staff report is publicly available on the City of San Diego's website. Courts regularly find that such legislative reports may be judicially noticed. *See San Diego Cnty. Lodging Association v. City of San Diego*, 561 F. Supp. 3d 960, 964 n.3 (S.D. Cal. 2021) (taking judicial notice of staff report to San Diego City Council); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1152 (E.D. Cal. 2017) (taking judicial notice of staff report on revisions to a county ordinance). Accordingly, the Court will take judicial notice of the staff report *sua sponte* and consider it in this Order.

Court will not question the City's findings that this restriction tends to further its stated goals.[4]

The Ordinance does not burden more speech than necessary to serve its goals. The Supreme Court's reasoning in *Hill* is on point here. The Court there found that eight feet of separation will not impact readers' ability to read signs; if anything, it will aid their ability to read signs "by preventing others from surrounding them and impeding their view." 530 U.S. at 726. While oral communication might be more difficult for demonstrators, the Ordinance "places no limitation on the numbers of speakers or the noise level, including the use of amplification equipment," *id.* and the eight-foot zone "allows the speaker to communicate at a 'normal communication distance,'" *id.* at 726-27 (quoting *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377 (1997)). While "the burden on the ability to distribute handbill is more serious," the Ordinance does not "prevent a leafletter from simply standing near the path of oncoming pedestrians and proffering his or her material, which the pedestrians can easily accept." *Id.* at 727. And, at that point, pedestrians are "free to decline the tender." *Id.*; *see also Heffron*, 452 U.S. at 655 (noting that the First Amendment only protects the right to "reach the minds of willing listeners") (internal quotation marks and citation omitted). Demonstrators with leaflets can thus peacefully pass out leaflets to willing listeners without physically approaching unwilling listeners. *Hill*, 530 U.S. at 729-30.

The City has opted to protect those entering and exiting the Covered Facilities "from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Id.* at 729. It does not outright

---

[4] Plaintiff attempts to distinguish from *G.K Ltd. Travel* by pointing out that the legislature there deliberated heavily, received suggestions from the city's residents, and referred to other city's findings, 436 F.3d at 1073, while the process here does not appear to have been as thorough. But Plaintiff does not cite any authority to support the assertion that similarly extensive processes are required.

ban any form of protected speech. Demonstrators will be able to communicate their messages and otherwise engage in protected speech, they will merely be unable to lengthen interactions with unwilling listeners by remaining within eight feet of them without their consent as they enter and exit school. Allowing such harassment of uninterested students, for instance, could result in the disruption of school activities which the Supreme Court was concerned about in *Grayned*, 408 U.S. at 118, and *Tinker*, 393 U.S. at 513, and which the City of San Diego is concerned about here. While Plaintiff argues that the restriction is not the least intrusive method of preventing such harassment, ECF No. 12 at 5, this contention is irrelevant because such a content neutral restriction "need not be the least restrictive or least intrusive means of serving the government's interests." *McCullen*, 573 U.S. at 486 (internal quotation marks and citation omitted).

At the hearing on the motion, Plaintiff's counsel suggested that *Hill* may not apply to the instant case, which involves both a facial and as-applied challenge to an Ordinance. In *Hill*, the Court decided a facial challenge and noted that "[s]pecial problems that may arise where clinics have particularly wide entrances or are situated within multipurpose office buildings may be worked out as the statute is applied." 530 U.S. at 730. Based on this dicta, Plaintiff's counsel suggested that *Hill* would not extend to as-applied challenges. But "the label is not what matters. Instead, the important point for identifying the nature of a challenge is whether a plaintiff's claim and the relief that would follow reach beyond the particular circumstances of that plaintiff." *Project Veritas*, --- F.4th ----, 2025 WL 37879, at *4 (citing *Doe v. Reed*, 561 U.S. 186, 194 (2010)) (cleaned up). Plaintiff presently seeks a preliminary injunction to prevent enforcement of the Ordinance pending the outcome of the litigation. This relief would "reach beyond the particular circumstances of" Plaintiff and impact all prospective demonstrators at Covered Facilities. *Id.*; *cf. Reed*, 561 U.S. at 194 (construing a request

for a preliminary injunction barring the secretary of state from complying with state public records act as a facial challenge). To the extent special issues with the application of the Ordinance arise at future points in this litigation, the Court will address them when appropriate.

Accordingly, the Ordinance is narrowly tailored to serve the government's interest in protecting those entering and exiting health care facilities, places of worship, and schools.

### ii. Alternative Channels of Communication

Plaintiff briefly argues that the Ordinance does not leave open ample alternative channels of communication. ECF No. 9-1 at 7. Specifically, Plaintiff argues that there is no equivalent to distributing literature, and that the Ordinance severely obstructs this channel of communication because there is "no substitute for being able to approach an individual in order to hand out a leaflet without the encumbrance of seeking consent first." *Id.*

But as the Court in *Hill* pointed out, there are ample alternative channels of communication here. As described above, Section I.B.i *supra*, the Ordinance hardly impedes the reading of signs, allows for conversation at a reasonable distance, and gives leafletters the option of either staying in place in pedestrians' paths or obtaining consent to approach pedestrians. *See Hill*, 530 U.S. at 726-28. While the Supreme Court has noted that obtaining consent is a hindrance to leafletters' ability to deliver handbills to unwilling recipients, this simple fact did not change the result, as pedestrians are always free to decline such offers anyways. *Id.* at 727-28.

At bottom, the Ordinance only restricts certain types of speech in "the place[s] where the restriction is most needed." *Id.* at 730. Demonstrators may still engage in First Amendment activities at reasonable distances from students, and they are free from restrictions as to willing listeners who provide consent. While Plaintiff complains that

handing out leaflets will be "simply impossible" at times when many students are coming and going from school, the Court is not convinced that obtaining consent is so insurmountable a task. And, even if it was, there are still ample alternatives for Plaintiff to engage in expressive activity without disrupting the vulnerable individuals coming and going from the Covered Facilities. *See, e.g., Edwards v. City of Santa Barbara*, 150 F.3d 1213, 1217 (9th Cir. 1998) (finding that driveway buffer zone at health care facilities "permits ample alternative avenues of communication[] by placing no limit on speech or expressive activity outside a narrow zone").

Accordingly, the Court finds that the Ordinance is content neutral, narrowly tailored to serve a significant government interest, and provides ample alternative channels of communication. The Ordinance is thus a reasonable time, place, and manner restriction.

### c. The Ordinance is Not Overbroad

Plaintiff briefly argues that the Ordinance violates due process because it is overbroad. ECF No. 9-1 at 7-8. A law is unconstitutionally overbroad "if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see also Klein v. San Diego County*, 463 F.3d 1029, 1037-38 ("[a] law is overbroad if it . . . sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech") (internal quotation marks and citations omitted). The mere fact that some conceivable impermissible applications of a statute exist is insufficient. *Klein*, 463 F.3d at 1038 (citing *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). Rather, the overbreadth must be both real and substantial "in relation to the statute's plainly legitimate sweep." *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1974)).

Plaintiff argues that the Ordinance does not even have a "plainly legitimate sweep" because it "lumps together various different types of facilities, of which there are

1 | hundreds in the City, and impose[s] restrictions on the speech of anyone seeking to
2 | communicate with those entering or leaving them." ECF No. 9-1 at 8.  To this end,
3 | Plaintiff relies on *Houston v. Hill*, 482 U.S. 451, 466-67 (1987), where the Supreme
4 | Court invalidated an ordinance that "criminalize[d] a substantial amount of
5 | constitutionally protected speech" and accorded the police excessive and unguided
6 | discretion in deciding which violators to arrest.  But the Ordinance at issue is different
7 | from the ordinance in *Houston* in various respects.  This Ordinance is likely not violated
8 | nearly as often as the ordinance in *Houston*, which allowed officers to arrest anyone who
9 | "in any manner . . . interrupt[s] any policeman in the execution of his duty." *Id.* at 455.
10 | And this Ordinance sweeps a much narrower scope of conduct within its reach.  The
11 | Ordinance targets only signage, leafletting, and oral protesting, as opposed to the
12 | ordinance in *Houston*, which covered any speech that was broadly seen to abuse or
13 | interrupt police offers.

      In any event, Plaintiff's argument that the Ordinance does not have a "plainly legitimate sweep" falls short.  To be sure, Plaintiff correctly points out that there are many locations covered by the Ordinance.  But the Supreme Court rejected a similar argument in *Hill v. Colorado*.  *See Hill*, 530 U.S. at 730 ("Petitioners argue . . . that the statute is too broad because it protects too many people in too many places, rather than just the patients at the facilities where confrontational speech had occurred").  The Court reasoned that "[t]he fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance" because all persons entering or leaving the facilities "share the interests served by the statute." *Id.* at 730-31.  And the Court similarly distinguished from *Houston v. Hill*, where the ordinance attempted to regulate nonprotected activity but covered protected speech as well. *Id.* at 731.

      Plaintiff misunderstands the overbreadth doctrine in arguing that the Ordinance does not have a "plainly legitimate sweep."  The Ordinance is a valid time, place, and

manner restriction on protected speech.  By restricting protected speech in a constitutionally reasonable fashion, the Ordinance cannot be said to be overbroad.  The Ordinance applies to all speakers other than Plaintiff in a similarly reasonable manner.  "As Justice Jackson observed, 'there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.'  *Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 112 . . . (1949) (concurring opinion)." *Hill*, 530 U.S. at 731.  Here, because the Ordinance applies generally to all individuals, it is not constitutionally overbroad.

## CONCLUSION

The Court finds that Plaintiff has not shown a likelihood of success on the merits.  As such, the Court need not address the other required showings for preliminary injunctive relief.  Accordingly, Plaintiff's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Dated:  January 14, 2025

Hon. Gonzalo P. Curiel
United States District Judge