UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DON BLYTHE, an individual,

Plaintiff,

v.

City of San Diego,

Defendant.

Case No.: 24-cv-02211-GPC-DDL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**[ECF Nos. 42, 43]**

In this case, Plaintiff Don Blythe challenges the constitutionality of City of San Diego Ordinance O-21822 ("the Ordinance"), which requires protestors—when within 100 feet of health care facilities, places of worship, and school grounds (the "Covered Facilities")—to ask for consent before coming within eight feet of a person entering or exiting a Covered Facility for the purpose of providing that person with a leaflet, displaying a sign, or engaging in oral protest. ECF No. 43-4, at 9-10. Before the Court are Plaintiff's and Defendant's cross-motions for summary judgment. ECF No. 42, 43. For the reasons set for the below, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

## BACKGROUND

### I. Factual Background

Plaintiff Don Blythe regularly engages in pro-life, anti-abortion speech activities in California. ECF No. 42-1, ¶ 2. Specifically, several times a year, Plaintiff hands out anti-abortion leaflets to high school students as they leave school. *Id.* ¶ 3.

On November 25, 2024, he filed this lawsuit against the City of San Diego ("the City"), challenging City of San Diego Ordinance O-21822 ("the Ordinance") as unconstitutional. *See* ECF No. 1. Plaintiff amended his complaint on January 27, 2025. ECF No. 18.

The City passed the challenged Ordinance on June 11, 2024. ECF No. 43-4. Plaintiff specifically challenges subsection c of the ordinance, which reads in relevant part:

> (c) Consent Required. Within a radius of 100 feet of a *health care facility*, *place of worship*, or *school grounds*, unless the person or motor vehicle occupant *consents*, no person shall:
>
> (1) knowingly and willfully approach within eight feet of a person in the public right-of-way or sidewalk area who is seeking to enter or exit a *health care facility*, *place of worship*, or *school grounds*, to:
>
> (i) pass a leaflet or handbill to that person;
>
> (ii) display a sign to that person;
>
> (iii) engage in oral protest, education, or counseling.

ECF No. 43-4, at 9–10 (emphasis added).

The Ordinance is based on the statute upheld by the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). *See* ECF No. 43-4, at 32. In *Hill*, the Supreme Court considered a First Amendment challenge to a nearly identical ordinance which made it unlawful to, within 100 feet of the entrance to a health care facility, "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education,

or counseling with such other person[.]'" *Hill v. Colorado*, 530 U.S. 703, 707 (2000) (citation omitted). The San Diego Ordinance adopts the consent requirement and buffer zones present in the *Hill* statute, but extends their application to include places of worship and school grounds in addition to health care facilities. ECF No. 43-4, at 24.

The Ordinance was adopted "to balance often competing rights: to freely gain access to health care and educational services . . . and to freely exercise constitutionally protected speech." ECF No. 43-4, at 4. In support of this purpose, the Ordinance states that "demonstration activities around Covered Facilities have subjected students, teachers, [and] parents . . . to harassment and abuse from people who attempt to block entrances and exits to Covered Facilities and parking lots used to access these locations." *Id.* at 5. The Ordinance further states that "aggressive demonstration activities pose significant public safety threats" and that "schools are increasingly exposed to demonstration activities." *Id.*

Plaintiff filed this lawsuit alleging that "[o]btaining consent is an unrealistic requirement for distributing literature to multiple people arriving in waves and leaves Plaintiff unable to engage in the critical literature distribution aspect of his free speech activity." ECF No. 18, ¶ 30. Plaintiff further alleged that, because of the ordinance, he is refraining from engaging in free-speech activity outside high schools. *Id.*

**II. Procedural History**

On December 13, 2024, Plaintiff filed a motion for preliminary injunction, seeking to enjoin enforcement of the Ordinance. ECF No. 9-1. This Court determined that Plaintiff had not shown a likelihood of success on the merits and denied the motion. ECF No. 17; *Blythe v. City of San Diego*, No. 24-CV-02211-GPC-DDL, 2025 WL 108185, at *7 (S.D. Cal. Jan. 14, 2025).

The City then moved to dismiss Plaintiff's complaint for failure to state a claim. ECF No. 20. The Court granted the City's motion to dismiss as to Plaintiff's facial challenges to the statute as overbroad and vague. ECF No. 28; *Blythe v. City of San Diego*, No. 24-

CV-02211-GPC-DDL, 2025 WL 1570528, at *15 (S.D. Cal. June 2, 2025). Dismissal of these claims was without leave to amend. *Id.* The Court also dismissed Plaintiff's facial free speech claim. While the dismissal of the facial free speech claim was with leave to amend, Plaintiff did not amend. The Court denied the City's motion to dismiss only as to Plaintiff's as-applied free speech claim. *Id.*

In ruling on the motion to dismiss, the Court drew several legal conclusions. First, the Court found the Ordinance to be a content neutral regulation on speech. *Blythe*, 2025 WL 1570528, at *4–*7. Next, the Court found that "ensuring students can attend school free from harassment, obstruction, or intimidation is a significant government interest." *Id.* at *9 (cleaned up). The Court also concluded that the Ordinance provides ample alternative channels of communication. *Id.* at *13. The Court denied the City's motion to dismiss based only on the question of narrow tailoring. Specifically, the Cout found Plaintiff had cast doubt on whether the Ordinance was reasonably related to the City's asserted interest in protecting students leaving schools from harassment, obstruction, and intimidation. *Id.* at *12.

## REQUEST FOR JUDICIAL NOTICE

Plaintiff requests judicial notice of City of San Diego Ordinances O-18452 and O-21822.[1] ECF No. 42-3, at 2. Under Federal Rule of Evidence 201, a Court may take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

As the Court acknowledged in its previous order on the City's motion to dismiss, ECF No. 28; *Blythe v. City of San Diego*, No. 24-CV-02211-GPC-DDL, 2025 WL 1570528 (S.D. Cal. June 2, 2025), "[m]unicipal ordinances are proper subjects for judicial

[1] City of San Diego Ordinance O-18452 is an earlier version of O-21822, which is the Ordinance at issue in this lawsuit. ECF No. 42, at 8-9.

notice." *Tollis, Inc. v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007). The Court therefore takes judicial notice of the ordinances.

## LEGAL STANDARD

Per Federal Rule of Civil Procedure 56, summary judgment is appropriate when the evidence in the record demonstrates "that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is "material" when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id*. at 325. In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. The Court does not engage in credibility determinations or the weighing of evidence; these functions are for the trier of fact. *Id*.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted). Moreover, courts must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003).

## DISCUSSION

Plaintiff argues that Subdivision (c) of the Ordinance is an unconstitutional restriction on free speech in a public forum. ECF No. 42, at 6. Specifically, Plaintiff argues that the Ordinance does not satisfy intermediate scrutiny because it is not narrowly tailored to further the City's asserted interests and fails to leave speakers with ample alternative channels of communication. ECF No. 42, at 11–18. Plaintiff also argues that Subdivision (c) of the Ordinance is unconstitutionally content-based. *Id.* at 19–20.

### I. The Ordinance is Content Neutral

The Court begins by noting that it has already determined that the Ordinance is content neutral. Plaintiff acknowledges this, and states that he reiterates his arguments out of an "abundance of caution" to preserve the issue for appeal. ECF No. 42, at 16 n.2. Thus, the Court will not reassess Plaintiff's argument that the Ordinance is content-based and adopts it prior reasoning and conclusion that the Ordinance is content neutral. ECF No. 28; *Blythe v. City of San Diego*, No. 24-CV-02211-GPC-DDL, 2025 WL 1570528, at *4–*7 (S.D. Cal. June 2, 2025). The Court so finds because the Ordinance does not regulate speech based on topics, ideas or viewpoints expressed, but applies to all leafleting, signage, oral protest, education, and counselling equally. *Id.* Further, the Ordinance applies evenly to all who wish to handbill, display signs, or engage in oral protest or counseling. *Id.* In short, the Court agrees with the Supreme Court's analysis in *Hill v. Colorado* in determining that the Ordinance "places no restrictions on—and clearly does not prohibit—either a particular viewpoint or any subject matter that may be discussed by a speaker. Rather, it simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." 530 U.S. at 723. Thus, the Ordinance is not a content-based restriction on speech.

//

//

## II. Intermediate Scrutiny

A content neutral regulation is valid if it is a "reasonable time, place, and manner restriction[] on speech." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006); *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Such regulations must survive intermediate scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 67 (2022). Under intermediate scrutiny, content neutral regulations must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *McCullen*, 573 U.S. at 477 (quoting *Ward*, 491 U.S. at 791).

Having again concluded that the Ordinance is content neutral, the Court now revisits the question of whether it satisfies intermediate scrutiny. Thus, the Court considers whether (1) there is a significant government interest; (2) whether the Ordinance is narrowly tailored to serve that significant interest; and (3) whether the Ordinance leaves open ample alternative channels for communication. *See*, *e.g.*, *Ctr. For Fair Pub. Pol'y v. Maricopa Cnty., Arizona*, 336 F.3d 1153, 1166 (9th Cir. 2003) ("The statute will be upheld if it is designed to serve a substantial government interest, is narrowly tailored to serve that interest, and does not unreasonably limit alternative avenues of communication.").

### A. The City Asserts a Significant Government Interest

The Ordinance's asserted purpose is "prevent[ing] the obstruction, harassment, and intimidation of people entering and exiting Covered Facilities." ECF No. 43-4, at 6. At the motion to dismiss stage, the City argued that it had a "significant interest in protecting students entering and exiting" schools. ECF No. 20-1, at 16. In this Court's order on the City's motion to dismiss, the Court agreed that "ensuring students can attend school free from harassment, obstruction, or intimidation is a significant government interest." *Blythe*, 2025 WL 1570528, at *9.

Now, in its motion for summary judgment, the City argues that it has "significant interests in protecting access to covered facilities and protecting students entering and exiting school grounds from harassment, obstruction, intimidation, and unwanted close physical approaches." ECF No. 43-1, at 4. The City reiterates its "significant interest[] in maintaining orderly ingress and egress" to schools. ECF No. 46, at 18. Plaintiff argues that this is an "entirely new purported interest," beyond that initially raised by the City. ECF No. 45, at 13. The Court disagrees.

As noted by the Supreme Court in *Hill*, "municipalities plainly have a substantial interest in controlling the activity around certain public and private places," including "schools." 530 U.S. at 728. Further, many courts have recognized a significant government interest in protecting students in and around schools, including on public roads, *see Knowles v. City of Waco, Tex.*, 462 F.3d 430, 434 (5th Cir. 2006), and while students are leaving school after classes end, *see PeTA v. Rasmussen*, 298 F.3d 1198, 1205 (10th Cir. 2002). Other courts have consistently identified significant government interests where municipalities seek to minimize disruptions to the learning environment and protect students' safety and well-being at school. *See Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972) (finding city had a "compelling interest in having an undisrupted school session conducive to the students' learning[.]"); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435–36 (9th Cir. 2008) ("[I]t is hard to think of a government interest more important than the interest in fostering a conducive learning environment for our nation's children"); *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 38 (10th Cir. 2013) (noting the "special characteristics of the school environment, where the government has a compelling interest in protecting the educational mission of the school and ensuring student safety") (cleaned up); *Klein v. City of Laguna Beach*, 594 F. Supp. 2d 1142, 1145 (C.D. Cal. 2009) (finding amplified sound buffer around school to be narrowly tailored to "the City's important

interests in maintaining a productive learning environment, tranquility, and, most importantly, safety").

As applied to schools—the Covered Facility at issue here—the City's purported interest has always centered on the safety of students and others as they enter and exit school buildings. The San Diego City Attorney's May 7, 2024, Staff Report—which the legislature considered when passing the Ordinance—specifically stated that the Ordinance aimed to "protect the public's health and safety," by "protecting safe and peaceful access" to schools. ECF No. 43-4, at 32–33. The City's interest in protecting safe and peaceful access includes an interest in protecting students from "obstruction, harassment, and intimidation," but it is not so limited. ECF No. 43-4, at 6. Rather, an interest in safe access to schools inherently includes an interest in maintaining safe and orderly entry and exit conditions. Accordingly, the Court again concludes that the City's interest in protecting students while entering and exiting schools—including protecting them from harassment, intimidation, and obstruction—is significant.

**B. The Ordinance is Narrowly Tailored to Serve the City's Interest**

Having determined that the City's interests are significant, the next question is whether the Ordinance is "narrowly tailored to serve" that interest. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward*, 481 U.S. at 791).

Plaintiff raises several arguments that the Ordinance is not narrowly tailored. Plaintiffs' main argument is that the City has produced no evidence that the Ordinance will actually advance the government's asserted interest. ECF No. 42, at 12. Specifically, Plaintiff notes that the City has no evidence of any harassment, intimidation, or obstruction arising from expressive activity outside San Diego high schools. *Id.* Thus, the City cannot show that the Ordinance is needed to address such a problem.

//

//

**1. The City Has Sufficiently Shown That the Ordinance Will Advance Its Significant Interests**

The key question in this case is whether the City has shown that the Ordinance furthers its asserted interest. *See Clark v. City of Lakewood*, 259 F.3d 996, 1015 (9th Cir. 2001), *as amended* (Aug. 15, 2001) ("These interests are indeed significant. . . . The crucial question on which our decision turns, however, is whether these regulations further those significant interests."). To do so, the City must "com[e] forward with evidence that 'demonstrate[s] a connection between the speech regulated . . . and the secondary effects that motivated the adoption of the ordinance." *Ctr. for Fair Pub. Pol'y*, 336 F.3d at 1166 (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 426 (2002)).

When assessing whether a municipality has met its burden to demonstrate a connection between a policy and a government interest, the Court turns to the burden-shifting framework outlined by the Supreme Court in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 426 (2002). At the outset, a municipality may rely on any evidence "reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 51–52 (1986); *see also Alameda Books*, 535 U.S. at 426. Such evidence must "fairly support its rationale for the ordinance." *Alameda Books*, 535 U.S. at 426. The City's initial burden is not a "high bar." *Id*. Indeed, the Supreme Court has held that "very little evidence" is required to support a city's justification for an ordinance, as "cit[ies] must have latitude to experiment." *Id.* at 451 (Kennedy, J., concurring). The burden then shifts to a plaintiff to cast doubt on a city's rationale by "demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings." *Id.* at 426. If a plaintiff sufficiently casts doubt on a city's rationale, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.* The Court walks through the *Alameda Books* framework step-by-step.

**a. Considering the Pre-Enactment Evidentiary Record, Plaintiff Has Cast Doubt on the City's Rationale for Enacting the Ordinance**

The Court first considers the pre-enactment record regarding what the City relied upon when enacting the Ordinance.

Here, the City has relied on the City of San Diego Staff Report drafted by the San Diego City Attorney and dated May 7, 2024. ECF No. 43-4, at 32. The Staff Report states that "[e]lementary, middle, and high schools have become assembly places for people to express positions on LGBTQ+ issues in schools, among others, and given proposed budget cuts statewide, further demonstration activity is anticipated." ECF No. 43-4, at 34. In support of its claims, the Staff Report cites a brawl between protestors at Glendale Unified School District Headquarters and a high school walkout in Temecula regarding a school district's anti-LGBTQ policies. *Id.* The Report also cites a disruptive protest that led the Poway school district's board of directors to adjourn a meeting. *Id.* Lastly, the Report cited "School Board Member Sabrina Bazzo's testimony to the Public Safety Committee supporting these amendments," which allegedly referenced disruptive anti-vaccine protests at schools. *Id.*

As an initial matter, Plaintiff claims that the statements within the Staff Report are "all founded in hearsay." ECF No. 45, at 20. However, Plaintiff's hearsay objection lacks merit. To the extent that Plaintiff takes issue with the City's consideration of hearsay, the City was entitled to rely on "any evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial . . . government interest." *Alameda Books*, 525 U.S. at 426 (internal quotation marks and citation omitted). Indeed, it is well understood that "[a] legislative choice is not subject to courtroom factfinding" nor all of the accompanying evidentiary constraints. *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citation omitted). As to this Court's consideration of the statements within the Staff Report, the Court does not consider the statements for their truth. Rather, the Court considers the statements for their impact on the legislature and whether the City reasonably

could have relied upon them to demonstrate a connection between the speech regulated by the Ordinance and the harm the City sought to address.

Next, the Court turns to the content of the Staff Report and whether it reasonably supports the City's asserted rationale for enacting the Ordinance. At the motion to dismiss stage, the Court found that certain incidents referenced in the Staff Report—namely, the brawl, walk-out, and school board protest—did not deal with leafleting or one-on-one conversations and were therefore not "reasonably relevant to whether a restriction on leafleting or one-on-one oral protest near schools would further the City's interests in protecting students form disruption." *Blythe*, 2025 WL 1570528, at *11. At the same time, the Court acknowledged that the evidence shows that schools have increasingly become forums for First Amendment activity. *Id*. The Court also notes that "[n]o precedent requires the City to obtain research targeting the exact activity that it wishes to regulate." *Gammoh v. City of La Habra*, 395 F.3d 1114, 1127 (9th Cir.), *amended on denial of reh'g*, 402 F.3d 875 (9th Cir. 2005). Thus, the Court did not, as Plaintiff argues, "firmly reject[] the statements in the staff report as evidence of the problem sought to be addressed by the law." ECF No. 45, at 20. Rather, the Court concluded only that reliance on these three instances alone was insufficient for the City to carry its burden under *Alameda Books*.

The Staff Report also recounts statements made by School Board Member Sabrina Bazzo at a hearing before the Public Safety Committee. At the motion to dismiss stage, the Court declined to consider this evidence because it was disputed and the Court is required interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage. *See Blythe*, 2025 WL 1570528, at *11. However, at the summary judgment stage, the evidence is admissible and may be given the weight that it deserves. The Staff Report informed the City Council that (1) School Board Member Sabrina Bazzo testified before the Public Safety Committee in support of the amendments and (2) during such testimony, Ms. Bazzo referenced instances of anti-vaccine protestors blocking school operations. ECF

No. 43-4. Unlike the other incidents referenced by the Staff Report, this statement speaks more directly to the issue of individual protestors creating disruptions and obstructions at school buildings. Thus, it is evidence that the City could have reasonably believed to be relevant to the problem the City seeks to address through the Ordinance.

While the evidence regarding Ms. Bazzo's testimony brings the City closer to meeting its evidentiary burden, Plaintiff has disputed its factual basis. Specifically, Plaintiff argues that the Staff Report mischaracterizes Ms. Bazzo's statements, which did not reference any specific protest activity blocking school operations during the pandemic.[2] ECF No. 45-1, at 4. However, Plaintiff does not dispute that the City of San Diego Public Safety Committee held a hearing on the proposed Ordinance and solicited public comment on the issue.

In sum, the pre-enactment record in this case is slim. Per the evidence before the Court, the City relied on a written report by the City Attorney—which cited various incidents showing that schools are increasingly forums for First Amendment Activity—and public testimony at a Public Safety Committee hearing. Though "the record here is

---

[2] Plaintiff does so by directing the Court to the video of the City Council's Public Safety Committee's March 20, 2024, hearing regarding the Ordinance. ECF No. 45-1, at 4. However, Plaintiff has made no effort to properly include the hearing testimony as evidence in support of his Opposition to the City's motion, thus it is not clearly part of the record before the Court.

The public hearing is a matter of public record, and therefore a proper subject for judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006). Additionally, a court "may take judicial notice on its own." Fed. R. Evid. 201(c). Therefore, the Court *sua sponte* takes judicial notice of Sabrina Bazzo's testimony at the City of San Diego Public Safety Committee hearing—accessible at https://sandiego.granicus.com/player/clip/8869?view_id=52&redirect=true—only for the fact that the content of Ms. Bazzo's testimony differs from the testimony described in the Staff Report.

hardly overwhelming . . . it does not have to be." *See Ctr. for Fair Pub. Pol'y*, 336 F.3d at 1168. *See also Alameda Books,* 535 U.S. at 451 (Kennedy, J., concurring) ("very little evidence is required" to justify a secondary effects ordinance). Indeed, this quantum of evidence may be sufficient for the City to carry its initial burden under the *Alameda Books* framework. *See*, *e.g.*, *Mitchell v. Comm'n on Adult Enter. Est. of the State of Delaware,* 10 F.3d 123, 133 (3d Cir. 1993) (finding state met its evidentiary burden where lawmakers received no documents and did not conduct public hearings). However, the Court must acknowledge that Plaintiff has cast doubt on the City's rationale for the Ordinance by both (1) demonstrating that aspects of the City's evidence are not clearly relevant to the City's rationale, and (2) furnishing evidence that disputes that City's depiction of Ms. Bazzo's statements. Given Plaintiff's challenges, the Court finds that the burden has shifted to the City to "supplement the record with evidence renewing support for a theory that justifies its ordinance." *Alameda Books*, 535 U.S. at 426.

**b. The Supplemented Record Supports the City's Rationale for Enacting the Ordinance**

The Court now looks to how the City has supplemented the record. Notably, this evidence need not have been before the legislature at the time it considered its Ordinance. Indeed, "if [a] plaintiff[] succeed[s] in casting doubt on the state's rationale," then a municipality can "rely on post-enactment evidence"—or, evidence that was "not before the legislature prior to [an ordinance's] enactment"—in "support of its position." *Ctr. For Fair Pub. Pol'y v. Maricopa Cnty., Arizona*, 336 F.3d 1153, 1166 n.3 (9th Cir. 2003).

First, the City calls the Court's attention to a case from the District of Columbia Court of Appeals, which concerned conduct by protestors leafleting in opposition to the construction of an abortion clinic next to a school. *Nicdao v. Two Rivers Pub. Charter Sch., Inc.*, 275 A.3d 1287, 1290 (D.C. 2022). The protestors followed students and parents onto school property and forced leaflets into students' hands as they departed the school. *Id.* Plaintiff argues that the facts of *Nicdao* are far removed from the conduct at issue here.

However, the Court agrees with the City that this case offers support for the proposition that unconsented close approaches to leaflet within the direct vicinity of school grounds can reasonably give rise to student intimidation, harassment, or obstruction. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1073 (9th Cir. 2006) (a city may rely on the "experience of other cities" in enacting policies).

Next, the City has produced "records from the San Diego Police Department concerning demonstration-related calls at or near schools and school-related facilities . . . for the period 2021 through 2025." ECF No. 43-3, at 1-2. The exhibit is accompanied by an affidavit from the investigator at the San Diego City Attorney's office who requested and received the records. *Id.* Plaintiff argues that the investigator's affidavit is inadequate to authenticate the call records. ECF No. 45, at 16. However, the Court notes that the investigator has personal knowledge of both (1) the request made of the San Diego Police and (2) that the exhibit is what he received from the San Diego Police. *See* Fed. R. Evid. 901(a) (to authenticate a document, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Further, Plaintiff does not actually dispute the authenticity of the call records, and "[w]hether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed, is . . . questionable." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). Lastly, the Court finds that the call records could be authenticated at trial. *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial."). Thus, Plaintiff's authentication challenge is not well-taken at this juncture.

Plaintiff also argues that the call records are hearsay. The Court agrees that the individual narrative statements within the call records, if considered for their truth, are hearsay. Further, the City has not argued that any hearsay exception applies. However, to

the extent the City offers the call logs to demonstrate that the existence of a robust record of 911 calls concerning school-related demonstration activity, this is not a hearsay use. The presence of a significant log of 911 calls concerning school and school-related demonstration activity offers some support for the City's theory that limiting certain demonstration-related conduct immediately outside schools—namely, unconsented close approaches—will advance student tranquility and safety.

The City next points to Plaintiff Blythe's own testimony regarding his intended conduct as evidence supporting the City's theory that the Ordinance advances the goal of reducing student obstruction. Plaintiff challenges the Ordinance as unconstitutional as applied to his specific conduct. When describing the specific activity Plaintiff seeks to engage in, Plaintiff acknowledged that he hopes to approach and speak to students leaving schools at dismissal who are "walking in clusters, often in quick succession with little space or time in between." ECF No. 43-4, at 40. Plaintiff argues that the consent exchange required by the Ordinance would be impracticable, because "it is difficult for a student to simultaneously stay in the mobile group and also engage in a brief conversation to give consent without either leaving the group or impeding the entire group's progress which blocks traffic." *Id.* at 41. Plaintiff asserts that these challenges arise only because of the Ordinance's consent exchange requirement. However, common sense dictates that the same obstruction concerns that Plaintiff attributes to the consent exchange apply equally to Plaintiff's own proposed activity of closely approaching individual students—who are walking in groups and in quick succession—to proffer a leaflet. Consequently, Plaintiff's own discovery responses and common sense support the City's proffered justification for the Ordinance. *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (noting that litigants may justify speech restrictions by references to "simple common sense") (citations omitted).

Lastly, common sense demands that the Court review the Ordinance with an appreciation for the times in which we live. The City enacted this Ordinance in an extraordinarily polarized political environment, wherein issues impacting students are subject to immense and impassioned public debate, protest, and opposition. These are no longer the times contemplated by the Supreme Court in *Grayned v. City of Rockford*, wherein the Court mused that "it would be highly unusual if the classic expressive gesture of solitary picket disrupts anything related to the school." 408 U.S. 104, 119 (1972). The Court cannot ignore this evolving societal context and finds that it lends support to the City's theory that the well-being of students is enhanced and protected by limiting protestors' ability to closely approach students entering and exiting schools without consent.

Plaintiff laments the City's lack of specific evidence of "harassment obstruction or intimidation resulting from leafletting, conversing, or displaying signs on the public sidewalks adjacent to San Diego high schools." ECF No. 42, at 14. However, Plaintiff asks the Court to impose an "unnecessarily rigid burden of proof." *City of Renton v. Playtime Theatres, Inc*., 475 U.S. 41, 50 (1986) (so finding where the appellate court required evidence relating to "the particular problems or needs of Renton."). A municipality is not required to produce specific evidence of an exact issue in an exact context in order to justify legislation relating to the issue. Rather, the standard is evidence "reasonably believed to be relevant to the problem that the city addresses." *Id.* (finding city could rely on the experiences of other cities); *Gammoh v. City of La Habra*, 395 F.3d 1114, 1127 (9th Cir. 2005) ("No precedent requires the City to obtain research targeting the exact activity that it wishes to regulate: the City is only required to rely on evidence 'reasonably believed to be relevant' to the problem being addressed.") (quoting *Alameda Books, Inc.*, 535 U.S. at 438). Indeed, "very little evidence is required" for a city to satisfy its evidentiary burden in justifying an ordinance's connection to a given interest. *Ctr. For Fair Pub. Pol'y v.*

*Maricopa Cnty., Arizona*, 336 F.3d 1153, 1162 (9th Cir. 2003) (quoting *Alameda Books*, 535 U.S. at 428). Further, precedent requires courts to treat legislative decisions deferentially, "even when First Amendment rights are implicated through secondary effects." *Charter Comm's, Inc. v. County of Santa Cruz,* 304 F.3d 927, 932 (9th Cir. 2002).

Though Plaintiff initially cast doubt on the City's reasoning, the City has demonstrated—by reference to the incidents detailed in the Staff Report, public hearing on the Ordinance, the experiences of other jurisdictions, 911 call logs related to demonstration activity at schools, common sense, and Plaintiff Blythe's own description of his desired conduct—support for its theory that the Ordinance will protect students from intimidation, harassment, and obstruction while entering and exiting schools. This evidence has also demonstrated that the Ordinance was not premised, as Plaintiff argues, on "mere speculation about danger," but rather tailored to address a real governmental concern. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1228 (9th Cir. 1990). Because the City has produced evidence "reasonably believed to be relevant" to its proffered interest, the Court finds that it has met its evidentiary burden. *See Ctr. For Fair Pub. Pol'y*, 336 F.3d at 1169 (quoting *Renton*, 475 U.S. at 51).

**2. The Ordinance is Otherwise Narrowly Tailored**

Plaintiff further argues that the Ordinance is not narrowly tailored because the City cannot show that the version of the law that preceded the Ordinance was insufficient to handle the problem identified by the City. However, to be narrowly tailored, a contested law "need not be the least restrictive or least intrusive means" of advancing the government's interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989). Indeed, the requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (quoting *United States v. Albertini,* 472 U.S. 675, 689 (1985)). Additionally, the

narrowly tailored regulation must not "burden substantially more speech than is necessary." *Id.*

Here, "[i]t appears self-evidant that the government's asserted interest"—protecting students from intimidation, harassment, and obstruction while entering and leaving school—"would be achieved less effectively in the absence of the [Ordinance]." *Ctr. for Fair Pub. Pol'y*, 336 F.3d at 1169. The Ordinance narrowly limits Plaintiff's capacity to knowingly approach individuals entering and exiting schools without consent. This limitation on only unconsented close approaches directly bears on the government's interest in protecting students from harassment, intimidation, and obstruction outside schools. Further, it does not burden Plaintiff's speech beyond the act of approaching without consent. The Ordinance leaves Plaintiff free to stand within 100 feet of schools, display signs, pass leaflets, and speak to students. Accordingly, the Court finds that the City's interest would be advanced less effectively without the Ordinance and that the Ordinance does not burden substantially more speech than necessary.

### C. The Ordinance Leaves Open Ample Alternative Channels for Communication

Plaintiff next argues that the Ordinance fails to leave speakers with ample alternatives for Communication. The Court has already held that the Ordinance does leave open ample alternative channels for communication. *Blythe*, 2025 WL 1570528, at *12–*13. Plaintiff acknowledges this and reasserts his argument primarily "out of an abundance of caution about inadvertent waiver." ECF No. 42, at 16. The crux of Plaintiff's argument on this point is that, "[w]here the goal is to get someone to accept a leaflet (or, in Blythe's case, a 16-page magazine), there is . . . no substitute for being able to approach a step or two towards an individual in order to hand it to him or her without the encumbrance of seeking consent first." *Id.* at 16–17.

The Court again finds that the Ordinance leaves open ample alternative channels for communication and adopts its prior reasoning in its opinion on the City's motion to dismiss.

*Blythe*, 2025 WL 1570528, at *12–*13. The Court is informed by the Supreme Court's reasoning in *Hill v. Colorado*, where the Court found ample alternative channels of communication were available when dealing with a substantially similar ordinance. 530 U.S. at 726–27. Even while acknowledging that the statute had a "more serious" impact on leafleting than other types of speech, the Court reasoned that the ordinance did not "prevent a leafletter from simply standing near the path of oncoming pedestrians and proffering his or her material, which the pedestrians can easily accept." *Id.* at 727.

The reasoning in *Hill* leads the Court here to similarly conclude that there are ample alternative channels for Plaintiff to communicate his message. The Ordinance does not hinder the readability of signs and oral communication, nor does it prevent Plaintiff from standing in students' paths and distributing leaflets to willing recipients. *Id.* at 726–27. Therefore, even accepting Plaintiff's claims regarding the impracticability of leafleting in his preferred manner under the Ordinance, the Court finds that he still has ample alternatives for communicating his message to students near schools without disrupting unwilling listeners. *See Edwards v. City of Santa Barbara*, 150 F.3d 1213, 1217 (9th Cir. 1998) (finding that driveway buffer zone at health care facilities "permits ample alternative avenues of communication[] by placing no limit on speech or expressive activity outside a narrow zone"). After all, "an alternative channel need not be ideal, but merely adequate." *Project Veritas v. Schmidt*, 125 F. 4th 929, 940 (9th Cir. 2025) (en banc) (citing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 654–55 (1981)). Because the Ordinance does not "eliminate[] the only method of communication by which [Plaintiff] can convey [his] message to a particular audience," and in fact leaves open ample alternative methods, Plaintiff's argument fails. *Id.* (citing *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229–30 (9th Cir. 1990)).

To the extent that Plaintiff argues that *Hill*'s reasoning does not apply to his circumstances because *Hill* considered a facial challenge to a law while he challenges the Ordinance as applied to his own activities, the Court is not convinced. Even in considering an as applied challenge, the Ninth Circuit has found an alternative channel to be adequate if it "permits the more general dissemination of a message." *Project Veritas*, 125 F. 4th at 958 (citation omitted). The Ordinance protects Plaintiff's right to generally disseminate his message. Accordingly, the Court finds that the Ordinance provides ample alternative channels of communication.

In sum, the Court concludes that the Ordinance is constitutional as applied to Plaintiff's expressive conduct. The law passes intermediate scrutiny—it (1) advances a significant government interest; (2) is narrowly tailored to serve that interest; (3) and leaves open ample alternative channels for communication of the information, *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)—and is therefore an appropriate regulation on the time, place, or manner of the protected speech and expression.

**CONCLUSION**

For the reasons set out above, the Court GRANTS Defendant the City of San Diego's motion for summary judgment, ECF No. 43, and DENIES Plaintiff Don Blythe's motion for summary judgment. ECF No. 42. As none of Plaintiff's claims against the City survive summary judgment, the Clerk of Court is directed to close the case.

Dated: September 11, 2026

Hon. Gonzalo P. Curiel
United States District Judge